

**SIGNED this 12th day of August, 2011**

_Shelley D. Rucker_
Shelley D. Rucker
**UNITED STATES BANKRUPTCY JUDGE**

_____

### UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF TENNESSEE
### SOUTHERN DIVISION

In re:

STEVEN McKENZIE                                   No. 08-16378
a/k/a Toby McKenzie                                Chapter 7

       Debtor;

GRANT, KONVALINKA & HARRISON, P.C.,

       Plaintiff,

v.                                                Adversary Proceeding
                                                  No. 11-1016

RICHARD L. BANKS, ANDREW B. MORGAN,
RICHARD BANKS & ASSOC., P.C., F. SCOTT
LEROY d/b/a LEROY & BICKERSTAFF,
F. SCOTT LEROY, LEROY & BICKERSTAFF
PLLC, LEROY, HURST & BICKERSTAFF,
PLLC and C. KENNETH STILL

       Defendants.

### MEMORANDUM

       Defendants F. Scott Leroy; LeRoy & Bickerstaff; LeRoy & Bickerstaff, PLLC; LeRoy,

Hurst & Bickerstaff, PLLC; C. Kenneth Still, trustee; Richard L. Banks; Andrew Morgan; and

Richard Banks & Assoc., P.C. (collectively "Defendants") move this court to dismiss the complaint of Plaintiff Grant, Konvalinka & Harrison, P.C. ("GKH" or "Plaintiff") or for a judgment on the pleadings in this adversary proceeding. [Doc. Nos. 41, 48, 56]. Plaintiff has responded to the motions of the Defendants. [Doc. Nos. 53, 54, 59].

On May 19, 2011 this court ordered the parties to file supplemental briefing regarding the issue of trustee and trustee's attorney immunity. [Doc. No. 60]. The parties submitted their supplemental briefs in response to the court's order. [Doc. Nos. 62 through 66].

The court has reviewed the briefing filed by the parties, the pleadings at issue, and the applicable law and makes the following findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

## I.    Background Facts

The record reveals that the Plaintiff filed its complaint ("Complaint") on February 11, 2011. [Doc. No. 1]. The Complaint asserts that GKH is a law firm located in Chattanooga, Tennessee. Defendants Banks and Morgan are attorneys who are affiliated with defendant Richard Banks & Associates, P.C. Mr. Banks represents the Debtor, Steven McKenzie ("Debtor"), in the Debtor's main bankruptcy case. Defendant F. Scott LeRoy is also an attorney. He was formerly a general partner with the law firm of LeRoy & Bickerstaff. The Complaint asserts that Mr. LeRoy became a member of a professional limited liability company known as LeRoy & Bickerstaff, PLLC around July 28, 2010, and that the company is now called LeRoy, Hurst & Bickerstaff, PLLC. Defendant C. Kenneth Still is the trustee ("Trustee") in the Debtor's main bankruptcy case. *See* Complaint, ¶¶ 1-4.

On November 20, 2008 a group of petitioning creditors filed an involuntary petition in bankruptcy against the Debtor in this court. *See* [Bankruptcy Case No. 08-16378, Doc. No. 1]. On December 20, 2008 the Debtor filed a Chapter 11 voluntary petition for bankruptcy, Bankruptcy Case No. 08-16987. On January 16, 2009 this court consolidated the two

bankruptcy cases. [Bankruptcy Case No. 08-16378, Doc. No. 33].

The court appointed Mr. Still Chapter 11 trustee for the Debtor on February 20, 2009.
[Bankruptcy Case No. 08-16378, Doc. No. 140].  The court converted the case to a Chapter 7
case on June 14, 2010, and Mr. Still continued as the Chapter 7 trustee.  [Bankruptcy Case No.
08-16378, Doc. No. 789].

On April 3, 2009 the court granted the Trustee's application to employ F. Scott LeRoy as
his Chapter 11 counsel.  [Bankruptcy Case No. 08-16378, Doc. No. 238].  He was reappointed
as Chapter 7 counsel on March 8, 2011, nunc pro tunc to July 1, 2010.  [Bankruptcy Case No.
08-16738, Doc. No. 1069].[1]  On July 1, 2010, this court granted the Trustee's application to
employ Mr. Banks as special litigation counsel. [Bankruptcy Case No. 08-16378, Doc. No. 806].

On August 5, 2010 the Trustee filed an adversary proceeding, Adversary Proceeding 10-
1407 ("Trustee Adversary Proceeding"), against GKH that is at the heart of the claims of GKH
against the Defendants.  *See* [Adv. Proc. No. 10-1407, Doc. No. 1 ("Trustee's Complaint")].  Mr.
Banks signed the Trustee's Complaint as attorney for the Debtor and as special litigation
counsel for the Trustee.  Mr. LeRoy signed the Trustee's Complaint on behalf of the Trustee.

The Trustee's Complaint alleged five categories of claims: 1) violation of the automatic
stay; 2) avoidance of preferences; 3) avoidance of fraudulent transfers; 4) equitable
subordination; and 5) claims against insiders.  The Trustee's Complaint alleged that GKH
assisted another defendant, Nelson E. Bowers II, by creating an entity to receive property of the
Debtor's bankruptcy estate after the filing of the involuntary petition in bankruptcy in violation of
the automatic stay pursuant to 11 U.S.C. § 362.  The Trustee's Complaint further alleged that
GKH attempted to defraud other creditors of the estate and asserted that GKH knew of the
Debtor's medical issues and financial problems and took advantage of those problems for

---

[1] GKH has appealed this decision pertaining to Mr. LeRoy's appointment nunc pro tunc.
*See* [Bankruptcy Case No. 08-16378, Doc. No. 1109].

GKH's own gain or that of GKH's other client Mr. Bowers.  Complaint, Exhibit 1, Trustee's

Complaint, ¶¶ 26, 40-46.  In the Trustee's Complaint, the Trustee also contended that GKH

"engaged in activities relating to other joint ventures with McKenzie, which are avoidable

pursuant to and as a result of their status as insiders."  *Id.* at ¶ 57.

       This court has already summarized some of the underlying factual allegations of the

Trustee's Complaint in its opinion relating to GKH's motion to clarify filed in the main bankruptcy

case.  *See* [Bankr. Case No. 08-16378, Doc. No. 1199 ("Motion to Clarify")].  For ease of

reference, the court will quote its factual findings from that opinion that summarized the

Trustee's allegations relating to the Trustee's Complaint.  The court has already found the

following:

> . . . The Trustee's Complaint sought to avoid a post petition transfer of
> approximately sixty acres[2] [("50 Acre Transfer")] of real estate located in Bradley
> County, Tennessee.  Based on filings with the Tennessee Secretary of State and
> the Register's Office of Bradley County which were attached to the Trustee's
> Complaint and on which Judge John C. Cook relied in his dismissal, [Adv. No.
> 10-1407, Doc. No. 1]; [Transcript, Adv. No. 10-1407 at pp. 8-9], the transferor
> was Cleveland Auto Mall, LLC whose members were the debtor and Mr. Nelson
> E. Bowers, II.  The transferee company was Exit 20 Auto Mall, LLC, formed
> December 10, 2008, organized by Wayne Grant, who also served as registered
> agent with an address at 633 Chestnut Street, Chattanooga, TN.  The deed was
> dated December 10, 2008, approximately twenty days after the involuntary filing.
> The deed reflects that it was "Prepared by and [to be returned] to Grant,
> Konvalinka & Harrison, P.C., Ninth  Floor - Republic Centre, 633 Chestnut Street,
> Chattanooga, TN 37450-0900."  *See* [Adv. No. 10-1407, Doc. No 1, p. 47]. The
> Affidavit of Value on the deed was signed by Nelson E. Bowers, II as Chief
> Manager and showed a value of $4,000,000. The Trustee's Complaint also had
> attached a Deed of Trust from Cleveland Auto Mall, LLC to Suntrust Bank dated
> February 24, 2006, securing approximately $3,800,000 in debt.
>
>     The court granted the motion of CapitalMark Bank & Trust for a judgment
> on the pleadings and granted the Motion of GKH to dismiss the Trustee's

---

[2]  The difference between the reference to sixty acres in these facts and the court's use of fifty acres is this memo is based on the allegation contained in the Trustee's Complaint that ten of the sixty acres owned by Cleveland Auto Mall, LLC had been conveyed to NBR TOY Properties, LLC, several months before the December transfer occurred. It appears to the court that Cleveland Auto Mall, LLC owned only fifty acres when the transfer giving rise to the Trustee's Complaint occurred.

Complaint on December 16, 2010.  [Adv. No. 10-1407, Doc. No. 67].  The court could not find any allegation of a transfer of property of the debtor or the estate. It found that the transfers alleged to have been made were of property owned by the limited liability company based on the documentation attached to the complaint.  With respect to the allegation regarding equitable subordination, the court found the claim was insufficient to support a claim for equitable subordination because the pleadings demonstrated no actions against property of the estate or the debtor.  [Transcript, Adv. No. 10-1407 at p. 11].

GKH is also a creditor in the case.  It filed a secured claim for $406,828.51 on April 27, 2009.  [Bankr. Case. No. 08-16378, Claim 86-1].  This claim reflected that the collateral securing its debt was real property.  GKH amended its claim on February 9, 2011, to increase the amount owed to $750,000 and reflected that its collateral was real estate and "other."  It attached a promissory note dated October 24, 2008, and a pledge agreement dated October 13, 2008, between the debtor and GKH, pledging a number of equity interests of the debtor.  [Bankr. Case. No. 08-16378, Claim 86-2].  GKH also attached an amended pledge agreement dated October 29, 2008, which pledged additional equity interests including the debtor's interest in Cleveland Auto Mall, LLC.  GKH also attached three deeds of trust on certain real estate of the debtor pledged on October 24, 2008.  [Bankr. Case. No. 08-16378, Claim 86-2, Parts 5, 6, and 7].  The amended pledge agreement recited that "Whereas, Pledgee has provided as of the date hereof to the Pledgor and the various Companies legal services in the amount of at least $385,000 ("Legal Services"); and Whereas, in order to induce Pledgee to continue to provide legal services to Pledgor and the Companies, Pledgor has agreed to pledge to Pledgee all of his interests as set forth on Exhibit 'A'". The entities listed on Exhibit A were defined as the "Companies." *Id.* Part 4, Amendment to Membership Interest and Stock Pledge Agreement at 1. The services to be provided would be "in an amount of at least $750,000." *Id.*

*See id.* at pp. 2-5, Memorandum Opinion relating to GKH's Motion to Clarify.  Two days after

filing the amended claim, on February 11, 2011, GKH filed this adversary proceeding.

Although the Trustee's Complaint contained allegations regarding the value of the 50 acres, the

value of that property and the impact which its transfer had on the value of the Debtor's estate

have yet to be litigated before this court.

GKH moved to dismiss the Trustee's Complaint on October 27, 2010.  [Adv. Proc. No.

10-1407, Doc. No. 28].  The court granted GKH's motion to dismiss on December 16, 2010 by

issuing an oral opinion finding that the 50 acres was not property of the estate.  [Adv. Proc. No.

10-1407, Doc. No. 67].  In the Complaint in this adversary proceeding, GKH brings claims for

malicious prosecution and abuse of process based on the Defendants' filing of the Trustee's Complaint against it. GKH claims that the Defendants failed to conduct a proper and diligent investigation into the claims asserted in the Trustee Adversary Proceeding and that the Defendants brought those claims with malice. GKH further claims that the Defendants were attempting to extort money from GKH through the use of improper judicial process. GKH seeks damages, punitive damages, attorneys' fees, costs, and interest.

## II.    Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court "must read all well-pleaded allegations of the complaint as true." *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997) (citing *Bower v. Federal Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996)). In addition, a court must construe all allegations in the light most favorable to the plaintiff. *Bower*, 96 F.3d at 203 (citing *Sinay v. Lamson & Sessions*, 948 F.2d 1037, 1039 (6th Cir. 1991)).

The Supreme Court has explained "an accepted pleading standard" that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1969 (2007). The complaint "must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." *Weiner*, 108 F.3d at 88 (citing *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993)). In *Twombly* the Supreme Court emphasized that:

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, . . . Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

127 S.Ct. at 1964-65 (citations omitted).  *See also, Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932 (1986) (noting that "[a]lthough for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation").   The Supreme Court has further clarified that *Twombly* is not limited "to pleadings made in the context of an antitrust dispute."  *Ashcroft v. Iqbal*, __ U.S. ___, 129 S.Ct. 1937 (2009).

Federal Rule of Civil Procedure 12(c) governs motions for judgment on the pleadings. Fed. R. Civ. P. 12(c).  The Rule states that "[a]fter the pleadings are closed–but early enough not to delay trial–a party may move for judgment on the pleadings."  *Id.*  The Sixth Circuit has explained that "'[f]or purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment.'" *Johnson v. Bredesen*, 624 F.3d 742, 746 (6th Cir. 2010) (quoting *Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 549 (6th Cir. 2008)).

### III.    Analysis

### A.    Immunity

The court asked the parties to submit supplemental briefing regarding the issue of the immunity of the Defendants.  The parties have now done so.  *See* [Doc. Nos. 62 through 65]. The Defendants each argue that they are absolutely immune from liability for activities taken in their capacities as a bankruptcy trustee or as counsel for the trustee.  GKH asserts that the Trustee's Complaint lacked any legal foundation and thus, the Defendants acted outside the scope of their authority in pursuing the Trustee Adversary Proceeding.  It argues that "Still and his attorneys exceeded Still's authority as Trustee in the [Trustee's Complaint] by seeking, as Judge Cook stated, to recover and/or seize property that Still and his attorneys clearly knew, or should have known, was not property of McKenzie's individual bankruptcy estate." [Doc. No. 65,

p. 9].

### 1.    Trustee's Duties under the Bankruptcy Code

The court begins its analysis of immunity with a review of the some of the duties at the heart of a trustee's obligations in representing a Chapter 7 bankruptcy estate.  11 U.S.C. § 704 requires the trustee to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest."  11 U.S.C. § 704(a)(1).  The trustee must further "investigate the financial affairs of the debtor," as well as "if a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper."  11 U.S.C. § 704(a)(4)-(5).

### 2.    Doctrine of Immunity as Applied to Bankruptcy Trustees

In *Kirk v. Hendon (In re Heinsohn)*, the bankruptcy court addressed state law claims of malicious prosecution and defamation that the trustee defendant had removed to the bankruptcy court.  231 B.R. 48, 50 (Bankr. E.D. Tenn. 1999).  The bankruptcy court reviewed the plaintiff's motion for remand or abstention and the defendant trustee's motion to dismiss.  It granted the trustee's motion to dismiss and denied the plaintiff's motions.  *Id.*  The plaintiff alleged that the trustee initiated a criminal action against him for an improper purpose and without probable cause.  *Id.*  He sued the trustee for malicious prosecution following his acquittal from criminal charges of bankruptcy fraud and conspiracy to commit bankruptcy fraud.

After determining that it had jurisdiction over the plaintiff's claims and that they constituted core proceedings, the bankruptcy court concluded that the trustee had absolute judicial immunity for his actions in making the criminal referral relating to the plaintiff.   In a detailed and well-reasoned opinion, the bankruptcy court reviewed the evolution of absolute immunity for trustees acting within the scope of their duties as defined by the Bankruptcy Code. The court quoted from a Sixth Circuit opinion that discussed whether a probate court administrator should be entitled to absolute immunity:

> . . . absolute judicial immunity has been extended to non-judicial officers who
> perform "quasi-judicial" duties.  Quasi-judicial immunity extends to those persons
> performing tasks so integral or intertwined with the judicial process that these
> persons are considered an arm of the judicial officer who is immune.

*In re Heinsohn*, 231 B.R. at 61 (quoting *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994)).  The

court applied the "functional approach" to a determination of immunity, first endorsed by the

U.S. Supreme Court in *Forrester v. White*, 484 U.S. 219, 224 (1988).  *In re Heinsohn*, 231 B.R.

at 62.  In applying the functional approach, "a court must not only examine the nature of the

functions with which the official has been entrusted but also 'evaluate the effect that exposure to

particular forms of liability would likely have on the appropriate exercise of those functions.'" *Id.*

(quoting *Forrester*, 484 U.S. at 224, 108 S.Ct. at 542).  The bankruptcy court concluded that the

trustee's duty to report possible violations of federal law was analogous to a prosecutor, and he

was entitled to immunity for such actions.  *In re Heinsohn*, 231 B.R. at 62.  The court explained:

> . . . the reasoning which supports full immunity from malicious prosecution
> actions for prosecutors applies equally to trustees:
>
>> The risk of injury to the judicial process from a rule permitting
>> malicious prosecution suits against prosecutors is real.  There is
>> no one to sue the prosecutor for an erroneous decision not to
>> prosecute.  If suits for malicious prosecution were permitted, the
>> prosecutor's incentive would always be not to bring charges.
>
> Similarly, if trustees are subject to suit and liability for their actions in reporting
> possible criminal violations to the prosecuting authorities, no trustee would ever
> make a referral.  No trustee would run the risk of damages being assessed
> against him for making a referral based on often incomplete information which
> produces no monetary benefit to the trustee since a trustee's primary obligation
> is to collect and liquidate assets of the estate, not report crimes.  Yet a trustee is
> in a unique position to discover possible bankruptcy crimes since his duties
> require him "to investigate the financial affairs of the debtor."  To expose a
> trustee to potential liability for complying with his obligations under 18 U.S.C. §
> 3057 would emasculate an important public function which a trustee is in a
> distinct position to fulfill.

*In re Heinsohn*, 231 B.R. at 63 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 438, 96 S.Ct. 984

(1976) and 11 U.S.C. § 704(4)).

    The bankruptcy court further acknowledged that other safeguards existed to protect

against prosecutorial abuses, including "an investigation and independent review by the United

States attorney" that serve to "lessen the possibility that an innocent party will be harmed by a

misguided or even malicious trustee."  *Id.* at 63.  After reviewing the landscape of analogous

cases, the court concluded that:

> [b]ased on the foregoing analysis that the function performed by a bankruptcy
> trustee in reporting possible criminal violations to the United States attorney is
> judicial in nature, that there are adequate safeguards to reduce the possibility of
> harm to an innocent party, and that subjecting a trustee to liability in this instance
> would deter the trustee from complying with his obligations under 18 U.S.C. §
> 3057, this court concludes that the defendant is protected by absolute immunity
> from the plaintiff's malicious prosecution action.

*In re Heinsohn*, 231 B.R. at 64.  The court distinguished the case concerning a malicious

prosecution claim involving a third party nonbeneficiary from a suit by a beneficiary of the

bankruptcy trust involving a breach of the trustee's fiduciary duty.  *Id.* at 65-66.

The district court affirmed the bankruptcy court's decision in *Kirk v. Hendon (In re*

*Heinsohn)*, 247 B.R. 237 (E.D. Tenn. 2000).  The district court explained:

> [t]he Court agrees with the bankruptcy court the trustee's obligation to report
> perceived violations of federal law to the United States attorney and to cooperate
> with any ensuing investigation and prosecution is a task integral to the judicial
> process which must be immune from suits for money damages.  Government
> officials must be free to execute their duties without the threat of lawsuits.  If
> lawsuits, in particular malicious prosecution and defamation actions such as in
> this case, are allowed against trustees for making criminal referrals, trustees will
> be less inclined to perform these duties and will hesitate in the future to do so,
> thereby lessening the impact and defeating the purpose of the criminal referral
> statute.

*Id.* at 245.

In *Lowenbraun v. Canary (In re Lowenbraun)*, the Sixth Circuit reviewed whether a

trustee was protected by immunity from claims of libel, slander, abuse of process, wrongful use

of civil proceedings and the tort of outrage brought against him by the debtor's wife.  453 F.3d

314, 319 (6th Cir. 2006).  The debtor's wife initiated suit against the trustee defendant in state

court, and the trustee removed the case to bankruptcy court.  The plaintiff moved for remand or

abstention, and the bankruptcy court denied the motion.  It then granted summary judgment to

the trustee on immunity grounds.  The district court affirmed the bankruptcy court decision, and

the plaintiff appealed.  *Id.* The Sixth Circuit reviewed cases pertaining to trustee immunity,

including *In re Heinsohn*, and held that the trustee was entitled to immunity for both his judicial

and extra-judicial statements regarding missing funds.  *Id.* at 322-23.  The Court noted:

> [The trustee's attorney's] role as counsel for the trustee permitted him to
> investigate [the debtor's wife's] transfer and to recover assets properly belonging
> to the bankruptcy estate. [The trustee's attorney's] actions, moreover, benefitted
> the estate. . . . Any statements made in the course of [the trustee's attorney's]
> investigation and recovery effort were thus within the privilege. [The trustee's
> attorney] is therefore entitled to immunity for his judicial statements.

*Id.* at 323.

The Sixth Circuit and courts within this Circuit have consistently presumed that the

trustee is acting within the scope of his authority as a trustee.  For example, in *In re Heinsohn*,

the district court, in affirming the bankruptcy court's opinion, noted that "[t]he Court presumes

such acts were part of the trustee's duties unless Plaintiff initially alleges at the outset facts

demonstrating otherwise."  247 B.R. 237, 246 (E.D. Tenn. 2000).  In considering the district

court's presumption, the Sixth Circuit noted in *In re Lowenbraun*:

> This presumption strikes us as persuasive.  Congress intended for the
> Bankruptcy Code to be comprehensive and for the federal courts to have
> exclusive jurisdiction over bankruptcy matters.  A presumption in favor of the
> trustee, counsel, or other bankruptcy official that they were acting within the
> scope of their duties prevents a plaintiff . . . from making unsupported allegations
> in an attempt to defeat Congress's goal of providing exclusive federal jurisdiction
> over bankruptcy matters.

453 F.3d at 322.  *See also, Unencumbered Assets Trust v. Hampton-Stein (In re National*

*Century Fin. Enterpr., Inc.)*, 426 B.R. 282, 292 (Bankr. S.D. Ohio 2010).

Courts in other jurisdictions have also determined that bankruptcy trustees are entitled to

immunity when performing duties outlined for them in the Bankruptcy Code.  For example in

*Traina v. Blanchard*, the district court concluded that:

> [c]ourt appointed bankruptcy trustees are among those who play a fundamental
> role in the administration of the judicial process and therefore are entitled to
> immunity.  "Judicial immunity not only protects judges against suit for acts done
> within their jurisdiction, but also spreads outward to shield related public
> servants, including . . . trustees in bankruptcy . . . ."  Judicial employees enjoy
> absolute immunity for quasi-judicial acts done in the course of their employment.
> Quasi-judicial acts include those which play a fundamental role to the judicial
> process. . . . The role of a Chapter 7 bankruptcy trustee, appointed by a
> bankruptcy judge, is fundamental to the administration of the estate.  A Chapter 7
> trustee performing the required functions established by the Bankruptcy Code,
> [the trustee] is cloaked with the protection given to judicial employees carrying
> out duties in the scope of their employment.

No. 97-0348, 1998 WL 483485, at * 2 (E.D. La. Aug. 13, 1998).

In *Picard v. Chais et al. (In re Bernard L. Madoff Investment Securities, LLC)*, the

bankruptcy court addressed the trustee's motion to dismiss counterclaims of tortious

interference with contract, tortious interference with a business relationship, conversion, and a

Fifth Amendment claim asserted by the defendants.  440 B.R. 282, 286 (Bankr. S.D.N.Y. 2010).

The bankruptcy court concluded that the counterclaims "must be dismissed because the

Trustee sent the Letter [warning of possible violations of the automatic stay] in good faith within

the scope of his duties, and is therefore immune from liability."  *Id.* at 290.  In its analysis, the

bankruptcy court noted that "[i]n the Second Circuit, a bankruptcy trustee is a quasi-judicial

official 'immune from suit for personal liability for acts taken as a matter of business judgment in

acting in accordance with statutory or other duty or pursuant to court order.'"  *Id.* (quoting

*Lebovits v. Scheffel (In re Lehal Realty Assoc.)*, 101 F.3d 272, 276 (2d Cir. 1996)).

In addressing whether the trustee was only protected by qualified immunity pursuant to

an exception to the immunity doctrine in the Second Circuit, the bankruptcy court explained the

policy behind trustee immunity.  *In re Bernard L. Madoff Investment Securities, LLC*, 440 B.R. at

292.  It noted:

> . . . sound policy counsels in favor of providing immunity for trustees in cases
> such as this one.  *A trustee should be shielded from liability for his lawful
> exercises of judgment and discretion, even if, in hindsight, such interpretations of
> law were incorrect.*  If immunity applied only to decisions that turned out to be

> proper, there would be no need for the doctrine of immunity.  Here, a
> determination that the Trustee can be held liable would deter future trustees for
> fear they could be held liable for every discretionary decision. . . . The Court
> cannot impose liability on the Trustee for carrying out his duties in good faith and
> based on his business judgment.

*Id.* at 292-93 (emphasis added).  *See also, Weissman v. Hassett*, 47 B.R. 462, 467 (D.C.N.Y.

1985) (noting that trustee report "furthered an important public purpose and should not render

him subject to suit, particularly since he acted pursuant to court order and statutory

authorization"); *Walton v. Watts (In the Matter of Swift)*, 185 B.R. 963, 970 (Bankr. N.D. Ga.

1995) (concluding that "case law has firmly established that, as an arm of the bankruptcy court,

the Trustee merits . . . quasi-judicial immunity.  Accordingly, the law will absolutely immunize the

Trustee for his conduct, unless he has acted in the clear absence of any authority regarding this

matter").

In *Weissman* the plaintiffs sought a finding of personal liability of the trustee for more

than $25 million in damages.  *Weissman*, 47 B.R. at 467.  The district court determined that the

trustee was immune from personal liability and noted that "[e]ven a remote prospect of personal

liability of such a magnitude could not help but lessen the vigor with which future reorganization

trustees will pursue their obligations to uncover wrongdoing and report on potential claims held

by a bankrupt estate."  *Id.*  The court also noted that the Bankruptcy Code contained several

safeguards to prevent a trustee's abuse of his authority.  *Id.* (citing 11 U.S.C. § 107(b)(2); 11

U.S.C. § 326; 11 U.S.C. § 324).  As one bankruptcy court has noted, "[s]uits against trustees

and their counsel should not be a substitute for Rule 9011, and indeed such lawsuits would

usually impose an unnecessary and unwarranted burden in cases in which a meritorious Rule

9011 motion could be brought."  *In re Kids Creek Partners, L.P.*, 248 B.R. 554, 564 (Bankr. N.D.

Ill. 2000).

     **3.**      **Extension of Doctrine of Trustee Immunity to Counsel for Trustee**

In *In re Heinsohn* the bankruptcy court explained that the reasoning behind extending

immunity to U.S. trustees, "'is easily extended to the front-line bankruptcy trustee.'"  *In re Heinsohn*, 231 B.R. at 63 (quoting Ralph C. McCullough, *Trustee Liability: Is There Enough Protection For These "Arms of the Court?"* 103 COM. L.J. 123, 138 (Summer 1998)).  Indeed, the Sixth Circuit has held that status as counsel for a trustee does not alter immunity analysis: "so long as 'they act at the direction of the trustee and for the purpose of administering the estate or protecting its assets,' counsel and other court-appointed officers who represent the estate 'are the functional equivalent of the trustee.'"  *In re Lowenbraun*, 453 F.3d at 322 (quoting *Allard v. Weitzman (In re DeLorean)*, 991 F.2d 1236, 1241 (6th Cir. 1993)).

> **4.     Whether Defendants' Prosecution of Trustee's Complaint Was Beyond the Scope of Their Authority**

GKH does not argue that the immunity doctrine does not exist.  Instead, it argues that the Defendants' actions in prosecuting the Trustee's Complaint were *ultra vires* actions or actions outside the scope of the Trustee's duties under the Bankruptcy Code.  As such, GKH contends that the Defendants' actions are not protected by the doctrine of immunity as explained by *In re Heinsohn*.  In that case, the court noted that absolute immunity generally protects "acts within the ambit of bankruptcy trustee's official duties."  *In re Heinsohn*, 231 B.R. at 63.  GKH cites several cases in support of its position that the Defendants' actions were outside the scope of their duties outlined in the Bankruptcy Code.

GKH relies on *Teton Millwork Sales v. Schlossberg* for support of its position. 311 F. App'x 145, 2009 WL 323141 (10th Cir. Feb. 10, 2009).   That case involved a receiver authorized by a court order to collect assets of the husband in an acrimonious divorce dispute.  A court order allowed him to pursue the assets of the ex-husband whether held "alone or jointly with any other person or entity, in his own name or in the name of any alias . . . or in the name of any other entity, including . . . Teton Millwork Sales." *Id.* at *147.  The West Virginia state court order directed the receiver to act outside of the state of West Virginia by obtaining ancillary

jurisdiction in other states.  *Id.*

The receiver then "seize[d] the assets" of Teton Millwork Sales, a Wyoming company in which the ex-husband was a twenty-five percent shareholder.  *Id.*  Teton Millwork Sales brought suit against the receiver in Wyoming, alleging that the receiver exceeded his authority by seizing its assets, as well as its mail and proprietary information when the receiver knew the ex-husband was only a twenty-five percent shareholder.  The complaint further contended that the receiver had falsely represented to several third parties that he had legal authority to seize the assets when he had not obtained the required ancillary jurisdiction in Wyoming.  *Id.*  The company further alleged that the receiver threatened its agents with financial penalties and gave them incomplete and misleading documents pertaining to his alleged legal authority.

In reversing the lower court's granting of the receiver's motion to dismiss, the Tenth Circuit noted that "[i]n order to be immune, the receiver must act within the scope of his authority in carrying out a court order."  *Id.* at *150.  The appellate court found that the court order only authorized the receiver to obtain the assets of the ex-husband, not assets that belonged to another entity.  Thus, the court concluded that the allegations that the receiver seized assets beyond the scope of the court order, without having obtained jurisdiction in Wyoming and through the use of fraudulent and misleading statements, were enough to survive a motion to dismiss.  *Id.* at *151.  In reversing the lower court, the Tenth Circuit noted:

> The foregoing analysis certainly does not resolve the issue of whether Mr. Schlossberg will ultimately enjoy absolute immunity.  Because we are reviewing the grant of a motion to dismiss, we need only decide whether the complaint states sufficient facts such that it is plausible that [the receiver] does not enjoy absolute immunity.  While in many cases it may be clear on a motion to dismiss whether absolute immunity applies, in this case that issue must be resolved in further proceedings, once the parties have had the opportunity to develop the facts through discovery.

*Id.* at *152.  Thus, *Teton Millwork Sales* involved a receiver's physical seizure of property outside the scope of a court order aggravated by allegations of misrepresentation and fraud.

The court does not find similar conduct in this case.

GKH also cites *Leonard v. Vrooman* in support of its position that the Defendants'
actions in prosecuting the Trustee's Complaint went beyond the scope of their authority.  383
F.2d 556 (9th Cir. 1967).  That case, again, involved an actual physical seizure of property by a
trustee.  The bankruptcy estate in *Leonard* included grocery store stock and equipment in a
building that had been leased to the bankrupt estate.  *Id.* at 558.  The trustee, along with a
constable, took physical possession of the entire building and put new locks on all of the doors.
*Id.* The Ninth Circuit determined that the trustee could be sued in state court by the owner of the
building without leave of the bankruptcy court due to his acts "in excess of his authority."  *Id.* at
560.  The court explained:

> The receiver-trustee really made two mistakes in this case.  His first was to break
> into and seize possession of the real property belonging to Leonard, when this
> property was not listed as an asset of the bankrupt's estate.
>
> His second mistake was not to relinquish possession of the real property when
> he discovered that title was claimed by and recorded in the name of [the
> building's owner].

*Id.*  The court concluded that "the trustee initially could have and should have obtained a
turnover order directing delivery to the trustee of the personalty which was an asset of the
bankrupt estate."  *Id.* at 560-61.

In *Ziegler v. Pitney*, another case relied upon by GKH, the Second Circuit addressed a
tort claim of negligence against a bankruptcy trustee where the negligent acts of the employees
of the trustee, who was operating a bankrupt railroad, resulted in the death of a child.  139 F.2d
595, 596 (2d Cir. 1943).  The Second Circuit affirmed the dismissal of the complaint because
the plaintiff was attempting to sue the trustees in their individual capacities when there was no
suggestion that the trustees had acted ultra vires outside of their authority.  *Id.*

Thus, there are situations that arise in which a bankruptcy trustee is not protected by the
doctrine of immunity.  As one bankruptcy court explained it:

> . . . it is well settled that a trustee cannot be held personally liable unless he
> acted outside the scope of his authority as trustee, *i.e.*, acted *ultra vires*, or
> breached a fiduciary duty that he owned [sic] as the trustee to some claimant.
> Examples of the former most often encountered is the seizing of property not
> owned by the estate.  Examples of the latter are failure to collect estate property
> or failure to preserve it.

*State of Illinois, Dep't of Revenue v. Schechter*, 195 B.R. 380, 384 (N.D. Ill. 1996) (citing

*Leonard v. Vrooman*, 383 F.2d 556) (other citations omitted).  In the bankruptcy court's ruling

affirmed by the district court in *Schechter*, the bankruptcy court noted, "[t]he situation in which

trustees have been most commonly found to have acted outside of their authority is in seizing

property which is found not to be property of the estate."  *Schechter v. State of Illionis, Dep't of

Revenue (In re Markos Gurnee Partnership)*, 182 B.R. 211, 217 (Bankr. N.D. Ill. 1995)).   In that

case the court determined that the bankruptcy trustee "was acting within the scope of his

authority in not paying the taxes claimed by the Illinois Department of Revenue" and that he was

not personally liable for the unpaid taxes.  182 B.R. at 228.

        The cases cited by GKH involve actions taken by a trustee or receiver that are *not*

analogous to the actions of the Defendants in filing the Trustee's Complaint.  Unlike the receiver

in *Teton Millwork Sales* and the trustee in *Leonard*, the Defendants here were seeking court

approval *before* seizing any assets that they alleged would be property of the estate.  This is

precisely the way the Bankruptcy Code expects bankruptcy trustees to act.  Rather than seizing

assets without authority, the Defendants sought this court's authority to recover assets for the

benefit of the estate.

        GKH also contends, citing *Kashani v. Fulton (In re Kashani)*, 190 B.R. 875 (B.A.P. 9th

Cir. 1995), that the Defendants should have sought leave of this court prior to filing the

Trustee's Complaint. *See* [Doc. No. 1307, p. 23].   A trustee in bankruptcy is given a number of

powers relating to his duties under 11 U.S.C. § 704.  One of these powers is the "capacity to

sue." 11 U.S.C. § 323(b).  In addition, the estate, created upon the filing of a petition in

bankruptcy, includes "all legal or equitable interests of the debtor in property as of the

commencement of the case." 11 U.S.C. § 541(a)(1). The estate also includes, "[a]ny interest in

property that the estate acquires after the commencement of the case." 11 U.S.C. § 541(a)(7).

Further, "[c]hoses-in-action . . . are included within this broad definition." *In re Bailey*, 421 B.R.

841, 849 (Bankr. N.D. Ohio 2009). *See also*, *Bauer v. Commerce Union Bank, Clarksville,*

*Tennessee*, 859 F.2d 438, 441 (6th Cir. 1988); *Logan v. JKV Real Estate Servs. (In re Bogdan*),

414 F.3d 507, 512 (4th Cir. 2005) (finding that property of the estate includes causes of action

arising after commencement of case); *Polis v. Getaways (In re Polis)*, 217 F.3d 899, 901 (7th Cir.

2000) (noting that property of the estate under § 541(a) has "uniformly been interpreted to

include causes of action").

      In *In re Lawrence* the district court explained:

> [i]t is the trustee who has the exclusive standing and capacity to sue and be sued
> on behalf of the bankruptcy estate under 11 U.S.C. § 323(b). The Trustee is
> appointed by the Bankruptcy Court to take charge of the debtor's estate, collect
> assets, bring suit on the debtor's claims against other persons, defend actions
> against the estate, and otherwise administer the estate.

*Lawrence v. Jahn (In re Lawrence)*, 219 B.R. 786, 801 (E.D. Tenn. 1998).

      Moreover, "[t]he trustee is the representative of the estate, 11 U.S.C. § 323(a), and it . . .

is authorized, *with or without court approval*, to 'commence and prosecute any action or

proceeding in behalf of the estate in any tribunal.'" *Hays and Co. v. Merrill Lynch, Pierce,*

*Fenner & Smith, Inc.*, 885 F.2d 1149, 1154 n.6 (3d Cir. 1989) (emphasis added) (quoting Fed.

R. Bankr. P. 6009). GKH points to no provision in the Bankruptcy Code that requires the *trustee*

to obtain leave of the bankruptcy court prior to pursuing claims of the estate.

      In *In re Kashani* the Ninth Circuit Bankruptcy Appellate Panel did note that "courts have

established certain standards and instructions whereby the trustees can protect themselves by

complying with these standards and, thus, gain judicial immunity. Those instructions include:

the trustee should give notice to the debtor and obtain prior court approval of the proposed act; .

. . ." 190 B.R. at 884.  However, in stating this proposition, the *In re Kashani* court cites cases

involving a trustee seeking to carry on business on behalf of the estate.  For example, in

*Bennett v. Williams*, 892 F.2d 822, 823 (9th Cir. 1989), the trustee sought leave of the court to

hire a property manager to manage the debtor's numerous rental properties.

In addition, in *Mosser v. Darrow* the United States Supreme Court also addressed the

situation of a trustee running the business of a bankrupt estate.  341 U.S. 267, 71 S.Ct. 680

(1951).  The Supreme Court explained that a trustee might seek instruction from the court when

attempting to exercise business judgment:

> Trustees are often obliged to make *difficult business judgments*, and the best that
> disinterested judgment can accomplish with foresight may be open to serious
> criticism by obstreperous creditors aided by hindsight.  Court[s] are quite likely to
> protect trustees against heavy liabilities for disinterested mistakes in business
> judgment. . . . The most effective sanction for good administration is personal
> liability for the consequences of forbidden acts, and there are ways by which a
> trustee may effectively protect himself against personal liability.
> The practice is well established by which trustees seek instructions from the
> court, given upon notice to creditors and interested parties, as to matters which
> involve difficult questions of judgment.

*Id.* at 273-74, 71 S.Ct. at 683 (emphasis added).

Here, by filing the Trustee's Complaint, the Defendants sought to pursue a claim relating

to collecting property of the bankruptcy estate and investigating the financial affairs of the

Debtor, two of the Trustee's essential duties outlined in 11 U.S.C. § 704(a).  The Defendants

sought to avoid the 50 Acre Transfer because it appeared substantially to diminish the value of

the Debtor's membership interest, and consequently the value of the estate.  The Trustee and

his counsel were not engaged in conducting business of the estate that required the use of

business judgment that would benefit from a court order authorizing them to proceed with a

particular business strategy.

### 5.    Establishment of Probable Cause for Trustee's Actions

GKH Complaint asserts claims for malicious prosecution and abuse of process.  Under

Tennessee law, a claim of malicious prosecution requires a plaintiff to demonstrate three
elements:

> (a) that a prior lawsuit or judicial proceeding was brought against the plaintiff
> without probable cause, (b) that the prior lawsuit or judicial proceeding was
> brought against the plaintiff with malice, and (c) that the prior lawsuit or judicial
> proceeding terminated in the plaintiff's favor.

*Parrish v. Marquis*, 172 S.W.3d 526, 530 (Tenn. Sup. Ct. 2005).  A plaintiff bears a heavy
burden of proof to establish the elements of lack of probable cause and malice.  *Buda v. Cassel
Bros., Inc.*, 568 S.W.2d 628, 631 (Tenn. Ct. App. 1978).

In *Buda* the court adopted the description from the Restatement of Torts regarding the
element of probable cause:

> In order to establish the lack of probable cause in instituting a civil proceeding, it
> must appear that the suit was filed primarily for a purpose other than that of
> securing the proper adjudication of the claim in which the proceedings are based.
> If it is established that the party instituting the proceeding reasonably believes in
> the existence of the facts upon which the claim is based and has reasonable
> belief that under those facts the claim may be valid or has reasonable belief in
> reliance upon the advice of counsel, sought in good faith and given after full
> disclosure of all relevant facts within his knowledge and information, then
> probable cause is established.

*Id.* at 631-32 (quoting Restatement of Torts, Second §§ 674, 675).

In *In the Matter of Linton* the court confronted the issue of probable cause for a trustee's
actions.  It addressed the plaintiff's contention that the trustee's dismissal of an adversary action
indicated a lack of probable cause.  In that case the adversary proceeding involved the trustee's
allegation of a fraudulent conveyance based "on a chain of transactions" occurring four years
before the debtor's bankruptcy petition was filed.  136 F.3d at 544-45.  The transaction included
the debtor selling her home to a trust for her sons and then leasing it back from the trust to live
in.  *Id.*  She later married a man who then bought the house from the trust.  *Id.*  In explaining
why it was affirming the bankruptcy court's decision that the trustee had probable cause for his
actions, the Seventh Circuit noted:

[The plaintiffs] appear to believe that the fact that the trustee dropped the adversary action shows that it was groundless and therefore malicious. This of course is wrong. Many suits filed in good faith after careful precomplaint investigation fizzle long before judgment whether because further investigation fails to substantiate the allegations of the complaint or because the defendant presents compelling evidence in his favor that the plaintiff didn't know about or because it turns out that the defendant doesn't have sufficient assets to make the continued prosecution of the suit worthwhile. As long as there is probable cause to sue, there is no malicious prosecution.

The bankruptcy judge was satisfied that there was probable cause here. It is true that the original transaction, in which [the debtor] sold her home to a trust of which her son was the trustee and leased it back from the trust to live in, occurred four years before she declared bankruptcy and we may assume was motivated by the tax reasons that she gave for the transaction. But the reason for the trust's sale of the house to her husband is not illuminated by the record, and looking at the series of transactions as a whole the trustee could reasonably suspect that the beneficial ownership of the home had either remained with [the debtor] all the time or had been revested in her by the sale nominally to her husband. Such a chain of transfers was bound to cause a light bulb to flash in a receiver's or bankruptcy trustee's brain. The trustee might well have been thought derelict not to pursue the claim of fraudulent conveyance to the extent that he did. The fact that [the trustee] couldn't substantiate his suspicions did not retroactively remove his probable cause to sue.

136 F.3d at 547. The court found that the suit for malicious prosecution "was doomed". *Id.* It then affirmed the bankruptcy court's decision to deny leave to sue the trustee in state court. *Id.*

As in *In the Matter of Linton*, in this action, the facts as alleged in the Trustee's Complaint, may have caused a light bulb to flash in the Trustee's mind regarding devaluation of the Debtor's estate. As explained *supra*, the Trustee has the duty and obligation to collect assets of the estate. *See* 11 U.S.C. § 704(a)(1). The December 10, 2008 50 Acre Transfer may have decreased the value of the Debtor's estate. Such a diminishment of the estate, coupled with allegations of questionable conduct by individuals owing a fiduciary duty to the Debtor, may have caused the Defendants to consider their obligation to maximize the value of the estate. Otherwise, the Defendants may have been accused by creditors of being derelict in their duties. Although, as Judge Cook held, the 50 Acre Transfer did not directly involve property of the estate, it may have served to impact the estate negatively during the gap period

between the filing of the involuntary bankruptcy petition and the voluntary bankruptcy petition.

Other courts have struggled with whether such a diminishment of a bankruptcy estate, even when it does not involve direct property of the estate, creates a cause of action which requires a finding of property of the debtor or the estate.  For example, in *Allentown Ambassadors, Inc. v. Northeast American Baseball, LLC (In re Allentown Ambassadors, Inc.)*, the court addressed the provision governing violations of the automatic stay and the concept of exercising control over property of the estate.  361 B.R. 422, 436-39 (Bankr. E.D. Pa. 2007).  The court provided extensive analysis of this issue, remarking that:

> At one end of the spectrum are cases suggesting that a non-debtor's actions may so interfere–directly or indirectly–with the intangible rights of a debtor (or trustee), or so substantially diminish the value of the bankruptcy estate's intangible property rights, as to constitute a violation of 11 U.S.C. § 362(a)(3). . . . Other courts posit that not every postpetition action taken by a third party that reduces the value of property of the bankruptcy estate constitutes the exercise of control of property of the estate in violation of 11 U.S.C. § 362(a)(3). . . . .

*Id.*  The bankruptcy court engaged in a lengthy review of various cases that examined the diminishment of a bankruptcy estate by postpetition actions.  *Id.*  In another case, the Eighth Circuit Bankruptcy Appellate Panel reversed a bankruptcy court's denial of a discharge where "the property transferred was not property of the debtor, but rather property of the LLC." *Northeast Nebraska Economic Devel. District v. Wagner (In re Wagner)*, 305 B.R. 472, 475 (B.A.P. 8th Cir. 2004).  The fact that the bankruptcy court was persuaded to deny a discharge on the basis that the debtor fraudulently transferred his property based on conduct analogous to the conduct alleged in the Trustee's Complaint indicates that the Trustee's legal theory is not as frivolous as GKH suggests.

Other courts citing *In re Wagner* have noted that determination of whether a "denial of discharge is not permissible when the transferred property belonged to the corporation" rather than the debtor "is far from settled at the bankruptcy court level. . . ."  *Hoffman v. Bethel Native Corp.*, No. 05-90023, 2007 WL 7540947, at *5 (B.A.P. 9th Cir. May 9, 2007).  In addition,

bankruptcy courts have considered the doctrine of piercing the corporate veil to deny discharge

based on an individual debtor's participation in the corporate transfer of assets in closely held

corporations.  *See e.g., Pisculli v. T.S. Haulers, Inc. (In re Pisculli)*, 426 B.R. 52, 61-62

(E.D.N.Y. 2010) (affirming denial of discharge where debtor "exercised complete dominion and

control over [corporation] and used that domination to commit a fraud or wrong against the

bankruptcy estate by selling the only assets of that company and using a portion of the

proceeds thereof for his own personal benefit, i.e, to satisfy debts for which he felt personally

obligated").

      In this proceeding, the court concludes that the Defendants are protected by the doctrine

of immunity from their actions taken in filing the Trustee's Complaint.  As the court in *In re*

*Bernard L. Madoff Investment Securities, LLC* noted, "a trustee should be shielded from liability

for his lawful exercises of judgment and discretion, even if, in hindsight, such interpretations of

law were incorrect."  440 B.R. at 292.  Although GKH argues that the Defendants' legal

argument was so frivolous and without merit as to be beyond the scope of their authority

pursuant to the Bankruptcy Code, courts have given bankruptcy trustees leeway in exercising

their judgment so that they need not "fear they could be held liable for every discretionary

decision."  *Id.*  Further, as discussed *supra*, several courts have discussed analogous

arguments pertaining to the diminishment of a debtor's estate and have struggled with how such

allegations that substantially affect the value of the debtor's estate should be addressed through

the Bankruptcy Code.  The court will not punish the Defendants for such "light bulbs" flashing

through their heads in seeking to maximize the assets of the estate for the Debtor's creditors.

      Further, the court concludes that the cases relied upon by GKH are distinguishable from

the situation in this proceeding.  Those cases involved a rogue trustee or receiver physically

seizing property that did not belong to the estate before taking the proper procedural steps to

obtain jurisdiction over those assets.  In this case, the Defendants merely asked the court for

assistance in determining whether the assets at issue were transfers that could or should be

avoided.  The court would be discouraging the filing of adversary proceedings by denying the

Defendants' motions here when an adversary proceeding is precisely the manner in which the

Bankruptcy Code seeks to have such questions as whether the debtor transferred property of

the estate addressed.  *See e.g.*, 28 U.S.C. § 157(b)(2)(A) (matters concerning the

administration of the estate are core proceedings).  Based on the strong policy reasons for

protecting a trustee from liability for exercising his judgment in how to maximize the assets

available for creditors, to collect possible assets of the estate and to prevent the Defendants

here from being distracted during an ongoing bankruptcy case, the court concludes that the

Defendants' motions should be granted.  Moreover, the court has other ways of sanctioning

wayward trustees.  For example, Fed. R. Bankr. P. 9011(c) gives the court authority to impose

sanctions and to adjust attorney's fees applications.

One additional reason for dismissing this action at this stage of the proceedings is that in

the Sixth Circuit, courts adhere to a policy of dismissal upon immunity grounds as early as

possible to avoid the unnecessary expense of discovery if immunity is applicable.  For example,

in *Moore v. City of Harriman*, the Sixth Circuit noted that in its earlier decision of *Wells v. Brown*:

> We explained the policy rationale of the qualified immunity doctrine, i.e., the
> "desire to shield public officials from diverting their energies through the forced
> defense of challenges to their actions taken in their governmental capacities,"
> and the related requirement that those who are entitled to such immunity "should
> be granted that immunity at the earliest possible stage of the case."  That means
> resolving the immunity question prior to discovery.

272 F.3d 769, 778 (6th Cir. 2001) (quoting *Wells*, 891 F.2d 591, 593-94 (6th Cir. 1990)) (citing

*Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727 (1982) (concluding that "bare allegations of

malice should not suffice to subject government officials either to the costs of trial or to the

burdens of broad-reaching discovery")).  Similarly, in this case the court concludes that

subjecting the Defendants to discovery in this proceeding will serve as a distraction during the

ongoing main bankruptcy matter and may preclude them from fully focusing on their duties

relating to administration of the Debtor's estate. *See e.g., In the Matter of Linton*, 136 F.3d at

545. Therefore, the court concludes that dismissal of this action is appropriate at this early stage

of the litigation due to the inherent policy considerations surrounding trustee immunity from both

liability, as well as the costs and burden of launching a defense to litigation.

**B.     Defendants' Arguments Regarding Pre-Emption, Failure to State a Claim, and Improper Service**

Having concluded that the Defendants are immune from suit in this action, the court

declines to consider the Defendants' further arguments relating to pre-emption and failure to

state a claim.  This court's analysis on those issues is not necessary to the decision here, and,

as such, would constitute mere dicta.

The court concludes, however, that the Defendants were properly served in accordance

with Fed. R. Bankr. P. 7004.  The Rule requires that service be effected "by any person at least

18 years of age who is not a party."  Fed. R. Bankr. P. 7004(a)(1).  The Defendants argue that

service was improper because an agent or employee of GKH served the Defendants with

process.  However, cases interpreting Fed. R. Civ. P. 4(c), the analogous Federal Rule of Civil

Procedure, have held that representatives or employees of a party may serve process.  *See e.g.*

*De Vos & Co. v. Profilati Italia, S.r.l.*, No. 96 Civ. 3557, 1997 WL 109474 at *3-4 (S.D.N.Y.

March 11, 1997) (noting that service was proper because "an employee of a law firm is not a

party for purposes of Fed.R.Civ.P. 4(c)(2)"); *United States v. Kahn*, No. 5:02-cv-230-OC-10GRJ,

2003 WL 22384761 at *2 (M.D. Fla. Sept. 2, 2003) (interpreting Fed. R. Civ. P. 4(c)(2) and

noting that "[t]he phrase 'any person who is not a party' does not preclude service of process by

the representative of a party").  Therefore, the court finds that GKH effected proper service on

the Defendants.

For these reasons, the court will **GRANT** the Defendants' motions to dismiss and motion

for judgment on the pleadings on immunity grounds alone.

**IV.       Conclusion**

As explained *supra*, the court concludes that the Defendants are entitled to immunity from further prosecution of this adversary proceeding against them.  The Trustee, as well as counsel for the Trustee are protected by the doctrine of immunity.  The Defendants' motions to dismiss and motion for judgment on the pleadings will be GRANTED.  GKH's Complaint will be DISMISSED with prejudice.

A separate order will enter.

# # #