UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

IN RE:                    )    1:11-CV-258
                          )    1:11-CV-320
STEVE A. MCKENZIE         )    1:11-CV-346
                          )
Debtor                    )    Chief Judge Curtis L. Collier


**MEMORANDUM**

Before the Court are three appeals from orders issued by the United States Bankruptcy Court

for the Eastern District of Tennessee (Rucker, J.). The first order, which is the subject of the appeal

in 1:11-CV-258, dismissed an adversary action filed by Appellant Grant, Konvalinka & Harrison,

P.C. ("Appellant") on the grounds that Appellees Richard L. Banks, Andrew B. Morgan, and

Richard Banks & Associates, P.C. (the "Banks Defendants"); F. Scott Leroy, F. Scott Leroy doing

business as Leroy & Bickerstaff, Leroy & Bickerstaff, PLLC, and Leroy, Hurst & Bickerstaff, PLLC

(the "Leroy Defendants"); and Trustee C. Kenneth Still (the "Trustee") were entitled to immunity

(Case No. 1:11-CV-258, Court File No. 2 (the "August 12, 2011 Order")). A second and third order

are the subject of the appeal in 1:11-CV-320. The second order denied Appellant's motion for leave

to file an action against Appellees Steve A. McKenzie and the Trustee in the Circuit Court of

Bradley County, Tennessee (Case No. 1:11-CV-320, Court File No. 2-2 (the "August 5, 2011

Order")) and the third order denied Appellant's motion to alter, amend, and/or otherwise set aside

the court's order denying Appellant's motion for leave (Case No. 1:11-CV-320, Court File No. 2-3

(the "September 27, 2011 Order")). The fourth order, which is the subject of the appeal in 1:11-CV-

346, dismissed another adversary action filed by Appellant on the grounds that Appellees the Leroy

Defendants and the Trustee were entitled to immunity and that Appellant had failed to state a claim

upon which relief could be granted (Case No. 1:11-CV-346, Court File No. 1-13 (the "September

30, 2011 Order")). The Court held oral arguments for all three appeals on February 8, 2012, and all parties were in attendance.

After giving careful consideration to the parties' arguments, relevant case law, and the evidentiary record, the Court **AFFIRMS** the judgment of the bankruptcy court in 1:11-CV-258; **AFFIRMS** the judgment of the bankruptcy court in 1:11-CV-320; and **AFFIRMS** the judgment of the bankruptcy court in 1:11-CV-346.

## I.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND[1]

This case began as an involuntary Chapter 7 bankruptcy action filed against debtor Steve A. McKenzie on November 11, 2008, in the United States Bankruptcy Court for the Eastern District of Tennessee. The Chapter 7 bankruptcy was refiled as a voluntary Chapter 11 bankruptcy, and the two cases were later consolidated (Case No. 1:11-CV-258, Court File No. 8 at 25-27). All of the events discussed below arise from this consolidated bankruptcy matter.

### A.    Facts Relevant to 1:11-CV-258[2]

On August 5, 2010, Appellee C. Kenneth Still, Trustee, initiated an adversary proceeding against Appellant Grant, Konvalinka & Harrison by filing a complaint in the bankruptcy court before Judge John C. Cook alleging, *inter alia*, violations of the automatic stay, avoidance of preferences, avoidance of fraudulent transfers, equitable subordination, and claims against insiders (Court File No. 8 at 7-24). The complaint was signed by Appellee Richard L. Banks, attorney for the

---

[1] The factual background comes from information in the documents and exhibits filed by the parties unless otherwise noted.

[2] In this case, the term "Appellees" is used in reference to the Banks Defendants, the Leroy Defendants, and the Trustee.

Plaintiff/Debtor and special litigation attorney for the Trustee, and Appellee F. Scott Leroy, attorney

for the Trustee. At the heart of the Trustee's complaint was an allegation that Appellant assisted

Nelson Bowers II (a client of Appellant who, along with debtor Steve McKenzie, was a 50%

member in a company named Cleveland Auto Mall, LLC) in creating a separate entity called Exit

20, LLC to receive property from Cleveland Auto Mall, LLC after the filing of the involuntary

bankruptcy petition and in violation of the automatic stay.

Judge Cook dismissed the Trustee's claims pursuant to Rule 12(b)(6) of the Federal Rules

of Civil Procedure on December 16, 2010 (Court File No. 8 ("December 16, 2010 Order"), at 98-

99). Among other things, Judge Cook concluded that the real estate at issue was not property of the

bankruptcy estate as a matter of law (Court File No. 8 at 108-110). He noted that whether Cleveland

Auto Mall, LLC could properly be called "property of the estate," "property of the debtor," or an

"interest of the debtor in property" turned on state law. In Tennessee, a limited liability company

has an existence apart from its members. Therefore, the Court held the alleged transfers involved

property of Cleveland Auto Mall, LLC--as opposed to debtor McKenzie--and was therefore not

property of the estate (*id.*). Judge Cook concluded Appellees failed to state a plausible claim on

which relief could be granted.

On February 11, 2011, Appellant filed a complaint in bankruptcy court and brought two state

law claims against Appellees: malicious prosecution and abuse of process (Court File No. 8 at 1-6).

Bankruptcy Judge Shelley Rucker handled this matter. On August 12, 2011, Judge Rucker dismissed

Appellant's claims pursuant to Rule 12(b)(6) and 12(c) on the grounds that Appellees were entitled

to immunity (Court File No. 2-2 ("August 12, 2011 Order")). Appellant appealed the August 12,

2011 Order by filing a notice of appeal on August 19, 2011.

3

**B.**     **Facts Relevant to 1:11-CV-320[3]**

On August 6, 2010, Appellees Trustee Still and Steve McKenzie via counsel filed a complaint in Bradley County, Tennessee against Appellant, Nelson Bowers II, Exit 20 Auto Mall, LLC, and an additional party (Court File. No. 10 at 1-14). The Bradley County action involved claims for breach of fiduciary duty and conflict of interest, assisting a fiduciary in committing a breach of duty, and civil conspiracy.

Appellant filed a motion to dismiss. On January 26, 2011, the Chancery Court of Bradley County dismissed two of Appellees' claims due to the passing of the applicable statute of limitations (Court File No. 10-2 at 92-93). On March 4, 2011, the parties entered an agreed order dismissing the remaining counts in the Bradley County action (Court File No. 10-1).

On April 22, 2011, Appellant filed a motion for leave of court to file a complaint in Bradley County against Trustee Still and his attorneys alleging claims of malicious prosecution and abuse of process (Court File No. 2-4). The bankruptcy court denied Appellant's motion for leave on August 5, 2011 (Court File No. 2-2). Appellant filed a subsequent motion to alter, amend, and/or otherwise set aside the court's order denying Appellant's motion for leave of court (Court File No. 10-4). The bankruptcy court denied this motion on September 27, 2011 (Court File No. 2-3). On October 4, 2011, Appellant filed a notice of appeal with respect to the August 5, 2011 Order and the September 27, 2011 Order.

**C.**     **Facts Relevant to 1:11-CV-346[4]**

---

[3] In this case, the term "Appellees" is used in reference to Steve A. McKenzie and the Trustee.

[4] In this case, the term "Appellees" is used in reference to the Leroy Defendants and the Trustee.

4

On July 23, 2010, Appellee Trustee Still, through counsel Appellee F. Scott Leroy, filed a complaint in Hamilton County, Tennessee for Appellant and other related parties to turn over files, books, records, and other related documents believed to be in their possession and allegedly belonging to the bankruptcy estate of debtor Steve McKenzie (Court File No. 1-3 at 22-24). The Hamilton County action was dismissed on November 5, 2010, by the parties through an agreed order of dismissal (Court File No. 1-3 at 128-29).

On February 18, 2011, Appellant filed a motion for leave of court to file an action in Hamilton County against Appellees for filing the July 23, 2010 complaint. The bankruptcy court denied Appellant's motion for leave on July 21, 2011. Appellant did not appeal the order, but the following day, filed a complaint in the bankruptcy court against Trustee Still and the Leroy Defendants claiming the filing of the Hamilton County action was both an act of malicious prosecution and abuse of process (Court File No. 1-3 at 1-17). On September 30, 2011, the bankruptcy court dismissed Appellant's July 22, 2011 complaint (Court File Nos. 1-12, 1-13). Appellant filed a notice of appeal on October 12, 2011.


II.    **STANDARD OF REVIEW**

The district court has appellate jurisdiction to hear appeals from final judgments and orders of the bankruptcy court pursuant to 28 U.S.C. § 158(a)(1). The bankruptcy court's factual findings are reviewed for clear error and its conclusions of law are reviewed *de novo*. *In re Behlke*, 358 F.3d 429, 433 (6th Cir. 2004). A finding of fact is considered clearly erroneous if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Heights Cmty. Cong. v. Hilltop Realty, Inc.*, 774 F.2d 135, 140 (6th Cir. 1985).

5

A bankruptcy court's decision to dismiss a case is generally reviewed for abuse of discretion. *In re DSC, Ltd.*, 486 F.3d 940, 944 (6th Cir. 2007). Abuse of discretion is also the proper standard for any equitable determinations of the bankruptcy court. *Mayor of Baltimore v. W. Va. (In re Eagle-Picher Indus., Inc.)*, 285 F.3d 522, 527 (6th Cir. 2002).

Several of Appellant's claims were dismissed by the bankruptcy court under Rules 12(b) and 12(c) of the Federal Rules of Civil Procedure, which were expressly adopted by Federal Rule of Bankruptcy Procedure 7012(b). A motion to dismiss filed pursuant to Rule 12(b)(6) "allow[s] a defendant to test whether, as a matter of law, [a] plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). The Court must "construe the complaint in the light most favorable to the plaintiff" and "accept all factual allegations as true." *Paige v. Coyner*, 614 F.3d 273, 277 (2010) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Bare assertions of legal conclusions are insufficient as well as "threadbare recitals" of the elements of a cause of action. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1939-40 (2009). Moreover, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Paige*, 614 F.3d at 277. A claim is plausible on its face if the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Twombly*, 550 U.S. at 556. If a genuine issue of material fact exists, the motion to dismiss should be denied. *Hollins v. Methodist Healthcare, Inc.*, 474 F.3d 223, 225 (6th Cir. 2007).

A motion for judgment on the pleadings under Rule 12(c) is considered using the same standard of review as a Rule 12(b)(6) motion. *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722

(6th Cir. 2010). Under this standard, "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id.* (citing *JP Morgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *JP Morgan Chase Bank*, 510 F.3d at 581-82.

III.    **CASE NO. 1:11-CV-258**

**Did the Bankruptcy Court Err in Concluding, as a Matter of Law and Without Allowing Appellant to Conduct any Discovery, that Appellees were Entitled to Immunity from Appellant's Claims?**

Appellant claims the bankruptcy court erred in determining that Appellees were entitled to immunity in this case.[5] Appellant contends at least two recognized exceptions to immunity applied to Appellees' conduct--(1) the Trustee exceeded his authority when he attempted to obtain property outside the bankruptcy estate and (2) the Trustee failed to obtain court approval before taking action. Further, Appellant claims the bankruptcy court erred when it dismissed the action without granting Appellant an opportunity to conduct discovery on the immunity issue. Appellees contest Appellant's interpretation of the law surrounding immunity and argue the bankruptcy court properly concluded that Appellees were entitled to immunity.

The issue in this appeal is whether a trustee is entitled to immunity after filing an adversary

---

[5] Appellant has not specifically appealed the application of the Trustee's immunity to his counsel. However, "as a matter of law, counsel for trustee, court appointed officers who represent the estate, are the functional equivalent of a trustee, where as here, they act at the direction of the trustee and for the purpose of administering the estate or protecting its assets." *Allard v. Weitzman (In re Delorean Motor Co.)*, 991 F.2d 1236, 1241 (6th Cir. 1993). Therefore, to the extent the Trustee is immune in this case the same analysis and conclusions would apply to the Trustee's counsel.

7

complaint alleging that a third party (here, Appellant) committed various violations such as avoidance of fraudulent transfers and violating the automatic stay. In *Kirk v. Hendon (In re Heinsohn)*, 247 B.R. 237, 244 (E.D. Tenn. 2000) (citation omitted), this Court, having affirmed a bankruptcy court decision on appeal, observed that a trustee in a bankruptcy proceeding is "entitled to broad immunity from suit when acting within the scope of [his] authority and pursuant to court order." *Cf. Sergent v. McKinstry*, -- F. Supp. 2d --, 2012 WL 967056, at *25 (E.D. Ky. Mar. 21, 2012) (quoting *Harris v. Wittman (In re Harris)*, 590 F.3d 730, 742 (9th Cir. 2009) (explaining "[b]ankruptcy trustees and court-appointed officers who represent the estate are entitled to absolute quasi-judicial immunity for actions 'within the scope of the authority conferred upon [them] by statute or the court.'")). In the original bankruptcy court decision, the court held that a Chapter 7 trustee who filed a criminal referral against a plaintiff was entitled to absolute immunity when the plaintiff subsequently filed a complaint against him alleging malicious prosecution and defamation. *In re Heinsohn*, 231 B.R. 48, 65-66 (Bankr. E.D. Tenn. 1999). In reaching this holding, the bankruptcy court relied, *inter alia*, on a decision from the United States Court of Appeals for the Sixth Circuit in which the court had to determine whether a probate court administrator was entitled to absolute immunity; the Sixth Circuit observed "absolute judicial immunity has been extended to non-judicial officers who perform 'quasi-judicial' duties. Quasi-judicial immunity extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Id.* at 61 (quoting *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994)). Additionally, this Court notes that, even in the non-criminal context, a trustee can receive quasi-judicial immunity in this Circuit. *See Lowenbraun v. Canary (In re Lowenbraun)*, 453 F.3d 314, 322-23 (6th Cir. 2006).

8

There is also a general presumption that trustees are acting within the scope of their duties. *See id.* at 322 ("A presumption in favor of the trustee, counsel, or other bankruptcy official that they were acting within the scope of their duties prevents a plaintiff . . . from making unsupported allegations in an attempt to defeat Congress's goal of providing exclusive federal jurisdiction over bankruptcy matters."). A trustee can be held personally liable, however, for acting outside the scope of his authority--that is, by engaging in an ultra vires act--or by breaching a fiduciary duty owed to a particular claimant. *Illinois Dep't of Revenue v. Schechter*, 195 B.R. 380, 384 (N.D. Ill. 1996). One example of an ultra vires act is seizing property not owned by the bankruptcy estate. *Id.* (citing *Leonard v. Vrooman*, 383 F.2d 556 (9th Cir. 1967)).

Here, Appellant contests whether Appellees acted within the scope of their authority when the Trustee filed a complaint against Appellant on August 5, 2010. The bankruptcy court determined that the Trustee's act of filing the underlying adversary complaint fell within the ambit of the following statutory duties: "collect[ing] and reduc[ing] to money the property of the estate" and "investigat[ing] the financial affairs of the debtor." *See* 11 U.S.C. § 704(a). The court also noted that there was no evidence that Appellees "physically" seized or wrongfully possessed any property or committed any other ultra vires act. Appellant argues, however, that Trustee Still inevitably acted outside his authority because the property he was attempting to recover was never part of the bankruptcy estate as a matter of law. Appellant also disputes the assertion that there has to be a physical possession or seizure of the property for the act to be considered ultra vires.

This Court agrees with the bankruptcy court's legal analysis and conclusion that Appellees acted within the scope of their authority. Pursuant to 11 U.S.C. § 704(a), a trustee has a number of statutory duties and those duties include recovering property of the estate and investigating the

9

debtor's financial affairs. Here, the complaint reveals the Trustee believed a fraud had been committed and was attempting to recover what was believed to be part of the bankruptcy estate. Admittedly, the Trustee's legal conclusions were incorrect. As explained in the December 16, 2010 Order issued by Bankruptcy Judge Cook and as argued by Appellant, under Tennessee law, Cleveland Auto Mall, LLC would not have been part of the bankruptcy estate (*see* December 16, 2010 Order at 108-09 (citing *Peyton v. Farris (In re Farris)*, 41 F.3d 1506 (6th Cir. 1994))). Following from that conclusion, the transfers made from Cleveland Auto Mall, LLC that served as the basis for Appellees' complaint could not, in fact, be property of the estate, property of Mr. McKenzie, or an interest in Mr. McKenzie's property. For good reason, however, courts give trustees broad leeway to pursue their duties when acting in good faith, even when their conclusions are not always correct. The district court in *In re Picard v. Chais (In re Bernard L. Madoff Investment Securities, LLC)*, observed:

> A trustee should be shielded from liability for his lawful exercises of judgment and discretion, even if, in hindsight, such interpretations of law were incorrect. If immunity applied only to decisions that turned out to be proper, there would be no need for the doctrine of immunity. Here, a determination that the Trustee can be held liable would deter future trustees for fear they could be held liable for every discretionary decision. . . .

440 B.R. 282, 292-93 (Bankr. S.D.N.Y. 2010). Here, although the Trustee's conclusion regarding the property at issue was incorrect in hindsight, his conduct still fell within the scope of his authority to investigate Mr. McKenzie's financial affairs and collect property believed at the time to be part of the estate.

With respect to the "seizure" issue, as noted by the bankruptcy court, several of the cases relied upon by Appellant can be distinguished because they primarily involve "physical" seizures and the wrongful possession of property. *See, e.g., Leonard v. Vrooman*, 383 F.2d 556 (9th Cir.

10

1967) (noting that, although the trustee may have had reasonable grounds to believe a fraud had been

committed, he acted outside his authority when he broke into and seized real property that belonged

to the debtor and failed to relinquish it even after discovering the debtor had title to the property);

*Teton Millwork Sales v. Schlossberg*, 311 F. App'x 145 (10th Cir. 2009) (determining that the court-

appointed receiver exceeded the scope of his authority when he improperly seized all of the debtor's

property). Here, unlike in *Vrooman* and *Teton Millwork Sales*, the Trustee at no point physically

seized any of Appellant's property nor was the Trustee ever in wrongful possession of the property

at issue. Instead, Appellees attempted to obtain the property, in light of the circumstances, by filing

a complaint through the proper procedural channels made available to them--that is, by initiating an

adversary action against Appellant. Appellees' efforts to obtain permission so that they could

recover the property was effectively denied through the court's dismissal of the adversary action.

Yet, throughout the life of the adversary proceeding, Appellees proceeded as allowed under the law

and neither seized nor retained possession of the property at issue. Thus, the Trustee did not commit

an ultra vires act.

The parties raise other arguments that this Court will address briefly. Appellant claims

Appellees did not seek court approval before filing their complaint and, therefore, should not receive

immunity. Although there is case law that states a trustee must not only be acting within the scope

of his authority but also pursuant to court order to receive immunity, this Court finds the bankruptcy

court did not err in concluding Appellees still acted within the parameters of the doctrine of

immunity. First, to the extent a court order is a requirement for immunity to apply, this Court

determines the bankruptcy court's explanation--that Appellees' filing of the August 5, 2010

complaint is the equivalent of Appellees seeking court approval--is sufficient. As noted earlier,

11

Appellees filed the adversary action for the purpose of recovering the property it believed to be part of the estate and no physical seizure had taken place at that point. Thus, the filing of the complaint was a preliminary act to obtain the court's approval. When that request was denied--by way of dismissal of the adversary action--Appellees effectively received their answer from the court.

Whether court approval is even required is a separate albeit equally important issue. Many of the cases cited by Appellant are distinguishable because they involve instances where the trustee had to exercise business judgment while "conducting business." Most significantly, in *Mosser v. Darrow*, 341 U.S. 267, 274 (1951), the Supreme Court discussed the "order" requirement but it was in the context of noting that reorganization trustees could protect themselves from personal liability by seeking instruction from the court "as to matters which involve difficult questions of judgment." Moreover, a number of other cases, including *In re Kashani*, 190 B.R. 875, 883 (9th Cir. 1995), which was cited by Appellant because it discusses the need for a court order, acknowledge that a trustee is entitled to quasi-judicial immunity or a form of derived judicial immunity when the trustee is "acting within the scope of authority conferred the trustee by the appropriate statute(s) or the court." *See also Sergent*, 2012 WL 967056, at *25. Thus, even if Appellees failed to obtain a court order as Appellant argues, Appellees had statutory authority under 11 U.S.C. § 704(a) to pursue the adversary action in this case.

Appellant also disputes whether the bankruptcy court was justified in granting immunity based on policy grounds. Appellees claim the bankruptcy court justifiably placed considerable weight on the "functional" reasons for granting immunity, such as those noted in *In re Heinsohn*, particularly the nature of the action, the chilling effect that might occur if trustees cannot get

12

immunity, and the other procedural safeguards that are in place to protect the parties.[6] This Court

concludes the bankruptcy court did not abuse its discretion in considering these factors and

determining that certain policy reasons bolstered its decision to grant Appellees immunity. As

already noted, trustees are given substantial leeway in performing their statutory duties, even if, after

the fact, it is discovered that some of their decisions are based on incorrect interpretations of law,

assuming the trustee acted in good faith. Courts do not want to discourage trustees from performing

their duties for fear of being held personally liable as this could lead to the "chilling effect"

discussed in *In re Heinsohn*. This Court further notes that, although Appellant accuses the

bankruptcy court of disregarding the interests of third parties subject to "unnecessary and legally

unsupportable lawsuits," this is a far-reaching allegation that is unsupported by the record. In this

matter, the bankruptcy court thoroughly considered and weighed both parties' arguments and

ultimately determined immunity was appropriate in this particular circumstance. The bankruptcy

court also made clear to Appellants that, to the extent the court ever determined the Trustee had

engaged in conduct for the improper purpose of harassing a party or third party, the Trustee could

be subject to sanctions pursuant to Rule 9011 of the Federal Rules of Bankruptcy Procedure, among

other options available to the court.

    As its final argument, Appellant claims the bankruptcy court erred because it did not give

Appellant an opportunity to conduct discovery prior to granting immunity. Appellant does not offer

---

[6] In concluding the trustee was entitled to absolute immunity, the court in *In re Heinsohn* applied the "functional" approach advocated by the United States Supreme Court. In particular, it considered "the nature of the functions with which a particular official or class of officials has been lawfully entrusted" as well as "the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions." *In re Heinsohn*, 213 B.R. at 62 (citing *Forrester v. White*, 484 U.S. 219, 224 (1988)). It also considered the fact that there were adequate procedural safeguards to reduce the possibility of harm to a third party. *Id.* at 64.

13

any case law to support this proposition. Rather, it claims that, under Rules 12(b)(6) or 12(c) of the Federal Rules of Civil Procedure, all facts and inferences should be drawn in its favor. Because it claims Appellees lacked a legal basis for filing the complaint, Appellant argues it should have been allowed to question Appellees about their motives and the broader circumstances behind the complaint. As properly noted by the bankruptcy court, however, there is a general principle in this Circuit that immunity suits should be resolved as early as possible to prevent the unnecessary expense of conducting discovery, *see, e.g.*, *Moore v. Harriman*, 272 F.3d 769, 778 (6th Cir. 2001). This is particularly true, as noted by this same bankruptcy court in a later proceeding involving many of the same parties, that "subjecting [the Trustee and his counsel] to discovery in this proceeding will serve as a distraction during the ongoing main bankruptcy matter and may preclude them from fully focusing on their duties relating to the administration of the Debtor's estate" (Case No. 1:11-CV-346, Court File No. 1-12 at 32). This same rationale applies here where requiring the parties to engage in discovery in the absence of any apparent signs of bad faith on the part of Appellees would result in both time-consuming and costly litigation on a matter that is merely one part of an extremely prolonged and complex bankruptcy case.

After considering the issue raised on appeal by Appellant in this case, this Court concludes the bankruptcy court did not abuse its discretion in dismissing Appellant's claims against Appellees. Accordingly, this Court **AFFIRMS** the judgment in the bankruptcy court's August 12, 2011 Order.

IV.    **CASE NO. 1:11-CV-320**

A.    **Did the Bankruptcy Court Err when it Denied Appellant's Motion for Leave to File a State Court Action in Bradley County, Tennessee Pursuant to the "Barton Doctrine?"**

14

Appellant claims the bankruptcy court erred when it dismissed Appellant's motion for leave to file a state court action in Bradley County, Tennessee against Appellees. The "Barton Doctrine" stands for the principle that a party who seeks to initiate an action against a trustee for acts performed by the trustee in his official capacity and within his authority as an officer of the court must obtain leave from the court if it seeks to do so in a non-appointing forum. *Barton v. Barbour*, 104 U.S. 126 (1881) ("[T]he Supreme Court held that a suit could not be maintained against a receiver for an act in his official capacity without first obtaining leave from the court which had appointed him."); *see In re Kashani*, 190 B.R. 875, 884 (9th Cir. 1995) (noting the reason the party must seek leave of court is because the non-appointing court lacks subject-matter jurisdiction).[7] One narrow exception to the Barton Doctrine is that a party may sue a trustee as provided in 28 U.S.C. § 959(a); *In re Kashani*, 190 B.R. at 884. Section 959(a) provides that trustees may be sued without leave of the appointing court with regard to "any of their acts or transactions in carrying on business connected with such property." 28 U.S.C. § 959(a). The breach of a fiduciary duty does not fall within this exception. *In re Kashani*, 190 B.R. at 884. Similarly, "carrying on business" typically does not include the acts of "[m]erely collecting, taking steps to preserve, and/or holding assets, as well as other aspects of administering and liquidating the estate." *In re DeLorean*, 991 F.2d at 1241 (quoting *In re Campbell*, 13 B.R. 974 (Bankr. D. Idaho 1981)).

Appellant claims the Barton Doctrine does not apply because Trustee Still was acting outside of his official capacity when he filed the Bradley County action. It claims the Trustee never obtained

---

[7] The Barton Doctrine has also been extended to include counsel representing the trustee. *See Allard v. Weitzman (In re Delorean Motor Co.)*, 991 F.2d 1236, 1241 (6th Cir. 1993) ("[L]eave of the Bankruptcy Court must be granted before a suit may be brought against counsel for trustee, in their capacity as counsel for trustee, since such suit is essentially a suit against the trustee.").

15

an order to sue and he exceeded his authority. Moreover, even if the Barton Doctrine applied, Appellant claims the Trustee's conduct falls within the "carrying on business" exception. Appellees argue it is relatively clear that the Barton Doctrine applied in this situation and that the exception was inapplicable.

In considering both parties' arguments, this Court first notes that the presumption in this Circuit is that a trustee is acting within the scope of his duties. *See In re Lowenbraun*, 453 F.3d 314, 322 (6th Cir. 2006). Here, as noted by the bankruptcy court, the Trustee's actions were taken pursuant to his duties and obligations described in 11 U.S.C. § 704, which includes investigating the debtor's financial affairs. Moreover, for this very reason--that is, because the Trustee was acting pursuant to his statutory authority--this Court concludes the Trustee was not required to obtain an order to sue as explained earlier in 1:11-CV-258. This is in contrast to the requirement that a party seeking to initiate an action against the Trustee (here, Appellant) does have to obtain leave from the court to sue in state court in light of the Barton Doctrine.

This Court also notes that Appellant failed to demonstrate how Appellees were "carrying on business" so as to make the exception to the Barton Doctrine apply. The Trustee was acting within the scope of his responsibilities when he brought the Bradley County action, which included taking steps to collect, preserve, and administer the assets of the estate. These acts do not fall within the narrow constraints of the "carrying on business" exception to the Barton Doctrine.

In the alternative, Appellant avers the bankruptcy court erred in denying its motion for leave to file in Bradley County because it had established prima facie cases for both the malicious prosecution and abuse of process claims brought against Appellees. As a preliminary matter, however, determining whether to grant or deny leave for a party to sue the trustee in a non-

16

appointing forum is a discretionary decision of the bankruptcy court. *In re Kashani*, 190 B.R. at 886. Before leave can be granted, the plaintiff must establish a prima facie case regarding his claim. *Id.* at 885 (citing *Anderson v. United States*, 520 F.2d 1027, 1029 (5th Cir. 1975)). The court can also exercise its authority to deny leave--even after the moving party has demonstrated its prima facie case has been met--after "balancing [] the interests of all parties involved." *Id.* at 886. Here, even assuming Appellant had established its prima facie cases, sufficient grounds existed for denying Appellant's motion for leave. Therefore the bankruptcy court did not abuse its discretion in reaching this conclusion.

In determining whether to grant or deny a party's motion for leave, the bankruptcy court can consider a list of five factors including (1) whether the trustee's acts "relate to the carrying on of the business connected with the property of the bankruptcy estate"; (2) whether the claims "pertain to actions of the trustee while administering the estate"; (3) whether the claims "involve the individual acting within the scope of his or her authority under the statute or orders of the bankruptcy court, so that the trustee is entitled to quasi-judicial or derived judicial immunity"; (4) whether the movants are "seeking to surcharge the trustee; that is, seeking a judgment against the trustee personally"; and (5) whether the claims deal with "the trustee's breaching [his] fiduciary duty either through negligent or willful misconduct." *In re Kashani*, 190 B.R. at 886-87. One or more factors can provide grounds for the bankruptcy court to deny the moving party's motion for leave. *Id.*

Here, the bankruptcy court discussed all five factors and offered adequate and legally supportable reasons justifying its decision to deny Appellant's motion. For example, the "carrying on business" exception noted earlier is the basis for the first factor, and this Court has already explained that this exception to the Barton Doctrine does not apply. With respect to the second

17

factor, the bankruptcy court properly concluded the Trustee's act of filing the Bradley County action was related to the administration of the debtor's estate even though the property at issue was later determined to not be property of the estate. The Trustee acted pursuant to his statutory responsibilities and duties pursuant to 11 U.S.C. § 704(a)(1), among other statutes and rules, to attempt to collect assets of the estate by using his authority to sue under 11 U.S.C. § 323(b). That the Trustee did not seek leave of court, one of several issues repeatedly raised by Appellant, is irrelevant as he was fulfilling one of his statutory duties. With respect to the third factor, this Court agrees with the bankruptcy court's assessment that the Trustee would have likely been entitled to judicial immunity because he was acting in accordance with his statutory duties. Finally, with respect to the fourth factor, Appellant was, in fact, seeking to bring an action against the Trustee personally. The only factor that may have weighed in favor of granting leave of court was the fifth factor involving whether the Trustee breached a fiduciary duty. Although the facts do not show the Trustee breached a fiduciary duty as alleged by Appellant, even if he had, the overall balancing of the factors weighs against granting leave of court.

Finally, in reaching this conclusion, the bankruptcy court briefly discussed the policy interests that would be served by keeping the case in the same forum. For example, the bankruptcy court explained it was already familiar with the case, particularly the array of legal issues arising out of the original bankruptcy matter and the complicated factual background. Moreover, a considerable amount of time and effort has already been expended on this matter by the bankruptcy court. To then grant Appellant's motion for leave would not promote the interests of judicial economy and would waste scarce judicial resources.

Accordingly, after taking into account all of the considerations noted by the bankruptcy court

along with the applicable law, this Court concludes the bankruptcy court did not abuse its discretion in denying Appellant's motion for leave and determining it was the proper forum to address the claims raised by Appellant.

**B.    Did the Bankruptcy Court Err when it Denied Appellant's Motion to Alter, Amend, and/or Otherwise Set Aside the Order Denying Appellant's Motion for Leave?**

Finally, Appellant claims the bankruptcy court improperly dismissed its motion to alter or amend. As a general rule, Rule 59 of the Federal Rules of Civil Procedure is applicable in the bankruptcy context pursuant to Fed. R. Bankr. P. 9023. Rule 59(e) provides that a court may alter or amend a judgment if there has been "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010) (quoting *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005)); *Abnet v. Unifab Corp.*, No. 06-2010, 2009 WL 232998, at *3 (6th Cir. Feb. 3, 2009). A motion brought under Rule 59(e) to alter or amend a judgment "is not an opportunity to re-argue a case." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998). Moreover, "parties should not use them to raise arguments which could, and should, have been made before judgment issued." *Id.* A motion to alter or amend a judgment is considered an "extraordinary remedy and should be granted sparingly because of the interests in finality and conservation of scarce judicial resources." *Hamerly v. Fifth Third Mortg. Co. (In re J&M Salupo Develop. Co.)*, 388 B.R. 795, 805 (B.A.P. 6th Cir. 2008) (quoting *Am. Textile Mfrs. Inst., Inc. v. Limited, Inc.*, 179 F.R.D. 541, 547 (S.D. Ohio 1998)).

Appellant also filed its motion pursuant to Rule 60, which allows a court to reconsider a judgment on various other grounds such as

19

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud . . . misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Similar to Rule 59(e) motions, Rule 60(b) motions are reviewed under the abuse of discretion standard. *In re J&M Salupo*, 388 B.R. at 801.

Here, the bankruptcy court had discretion to grant Appellant's motion to alter or amend the judgment, and it chose to deny Appellant's request. Appellant claims that, after filing several actions and complaints in this case, it discovered Steve McKenzie was an indispensable party; thus, it needed the court to reconsider its earlier judgment for jurisdictional reasons. As noted by the bankruptcy court, however, Appellant failed to specifically identify the factors on which it based its motion for relief under Rule 59 or Rule 60. Moreover, this Court finds that the bankruptcy court properly exercised its discretion in concluding no other reasons justified granting Appellant's motion to alter or amend. For example, Appellant's realization that Mr. McKenzie might be an indispensable party was not "newly discovered evidence" or a "surprise." Moreover, denying Appellant's motion would not result in a manifest injustice, especially since the bankruptcy court explained it would be addressing many of these same issues, such as whether Mr. McKenzie was an indispensable party along with the jurisdictional issues, when it addressed Appellant's motion for remand. Finally, this Court notes that the bankruptcy court properly decided that none of the other Rule 59 or 60(b) factors was satisfied. Accordingly, in the absence of sufficient grounds to

support Appellant's motion, this Court concludes the bankruptcy court did not abuse its discretion in denying Appellant's motion to alter or amend.

This Court **AFFIRMS** the judgments in the bankruptcy court's August 5, 2011 Order and the September 27, 2011 Order.


## V.    CASE NO. 1:11-CV-346

### A.    Did the Bankruptcy Court Err in Concluding, as a Matter of Law and Without Allowing Appellant to Conduct any Discovery, that Appellees were Entitled to Immunity from Appellant's Claims?

In this matter, Appellant raises arguments that largely resemble those made in 1:11-CV-258. That is, Appellant argues Appellees were not entitled to immunity because they acted outside the scope of their authority and failed to obtain approval from the bankruptcy court before acting. The conduct at issue in this matter, however, involves the Trustee's filing of a complaint to recover "files, documents, records, and related documents believed to have be[en] in the possession of Appellant" that belonged to the estate. Appellees submit that, for all the reasons previously stated in 1:11-CV-258, the Trustee is entitled to immunity.

This Court agrees with the bankruptcy court's conclusion that the Trustee was acting within the scope of his authority and is therefore entitled to immunity. The Trustee has a statutory duty to "collect and reduce to money the property of the estate" and "investigate the financial affairs of the debtor." 11 U.S.C. § 704. Moreover, the Trustee has authority to bring a turnover action to get the court to order an  attorney to turn over and disclose documents "relating to the debtor's property or

financial affairs." 11 U.S.C. § 542(e).[8] Appellant argues the Trustee waived any claim to immunity when he engaged in an ultra vires act and failed to obtain a court order prior to filing the complaint. However, as this Court explained earlier, a trustee engages in an ultra vires act when he acts outside the scope of his authority. *Illinois Dep't of Revenue v. Schechter*, 195 B.R. 380, 384 (N.D. Ill. 1996).

Moreover, there is ample case law that a trustee enjoys immunity when acting pursuant to a court order or statute. *See Sergent*, 2012 WL 967056, at *25. Here, the Trustee's complaint alleged Appellant maintained and controlled certain files, records, and documents related to several entities that were owned or controlled by Mr. McKenzie and that were believed to constitute property of Mr. McKenzie or the estate (Court File No. 1-3). The Trustee's efforts to obtain these documents fall directly within the statutory duties of a trustee as outlined above. Moreover, as noted by the bankruptcy court, the Trustee's act of filing a complaint to compel turnover of the documents is "precisely the way the Bankruptcy Code expects bankruptcy trustees to act" (Court File No. 1-12). This alternative is much more desirable and protects Appellant's rights much more than if the Trustee had physically seized the documents without following the proper procedural channels available through a court. Accordingly, this Court concludes the bankruptcy court did not err in determining the Trustee was entitled to immunity.

**B.    Did the Bankruptcy Court Err in Determining that Appellant had not**

---

[8] Although Appellant claims the Trustee brought his complaint pursuant to 11 U.S.C. § 542(a) not 542(e), this does not mean 11 U.S.C. § 542(e) does not apply. This Court agrees with the bankruptcy court's determination that the pleading was sufficient to give Appellant notice of the claims and grounds for the complaint even without explicitly mentioning § 542(e). Moreover, the factual allegations do broadly reference 11 U.S.C. § 541 and § 542 in support of the complaint, which led the bankruptcy court to ultimately conclude that § 542(e) was relevant to the Trustee's claims in his complaint.

22

### Sufficiently Pleaded Claims of Malicious Prosecution and Abuse of Process?

### 1. Malicious Prosecution

Appellant submits the bankruptcy court improperly dismissed its claim for malicious prosecution. A malicious prosecution claim under Tennessee law requires that the following three elements be met: "(1) a prior suit or judicial proceeding was brought against plaintiff without probable cause, (2) defendant brought such prior action with malice, and (3) the prior action was finally terminated in favor of plaintiff." *Christian v. Lapidus*, 833 S.W.2d 71, 73 (Tenn. 1992). "In order to establish the lack of probable cause in instituting a civil proceeding, it must appear that the suit was filed primarily for a purpose other than that of securing the proper adjudication of the claim in which the proceedings are based." *Buda v. Cassel Bros., Inc.*, 568 S.W.2d 628, 631-32 (Tenn. Ct. App. 1978). "If it is established that the party instituting the proceeding reasonably believes in the existence of the facts upon which the claim is based and has reasonable belief that under those facts the claim may be valid . . . then probable cause is established." *Id.* As a frame of reference, probable cause is the "objective determination of the reasonableness of the conduct in light of the surrounding facts and circumstances" wherein malice "concerns the subjective mental state of the plaintiff filing suit." *In re Prince*, 414 B.R. 285, 293 (Bankr. M.D. Tenn. 2009) (citing *Roberts v. Fed. Express Corp.*, 842 S.W.2d 246 (Tenn. 1992)).

This Court concludes the bankruptcy court did not abuse its discretion in dismissing Appellant's malicious prosecution claim. Admittedly, this Court recognizes that the 12(b)(6) standard under the Federal Rules of Civil Procedure is extremely deferential to plaintiffs. Nonetheless, to have a plausible claim for relief a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Twombly*, 550 U.S. at 556. Here, even taking all facts alleged by Appellant as true, Appellant is unable to demonstrate the Trustee lacked probable cause because, as noted by the bankruptcy court, the Trustee had a legal basis for his actions and, through his actions, sought a decision from the bankruptcy court regarding whether Appellant was obligated to turn over the files at issue. As has been reiterated throughout this decision, a trustee has statutory authority to seek turnover of documents that are related to property of the estate and to investigate the debtor's financial affairs. Moreover, even if the trustee ultimately decides to voluntarily dismiss the complaint, which was the case here, that does not negate the existence of probable cause. *See In the Matter of Linton*, 136 F.3d 544, 547 (7th Cir. 1998) ("The bankruptcy judge was satisfied that there was probable cause here. . . . The fact that [the trustee] couldn't substantiate his suspicions did not retroactively remove his probable cause to sue.").

Because the Trustee had a legal basis for seeking to obtain the documents at issue, Appellant's allegation that the Trustee lacked probable cause cannot be established. Moreover, that the Trustee had probable cause also means there can be no presumption of malice. *See Hill v. White*, 190 F.3d 427, 433 (6th Cir. 1999) (citing *Sullivan v. Young*, 678 S.W.2d 906, 911 (Tenn. Ct. App. 1984)). Accordingly, the bankruptcy court did not err in determining as a matter of law that Appellant's claim of malicious prosecution should be dismissed pursuant to Rule 12(b)(6).

### 2. Abuse of Process

Appellant also asserts that its abuse of process claim was improperly dismissed by the bankruptcy court. To establish an abuse of process claim, a plaintiff must show "(1) the existence of an ulterior motive; and (2) an act in the use of process other than such as would be proper in the regular prosecution of the charge." *Priest v. Union Agency*, 125 S.W.2d 142, 143 (Tenn. 1939). An

24

abuse of process claim can be distinguished from a malicious prosecution claim because abuse of process relates to "the improper use of process *after* it has been issued, not for maliciously causing process to issue." *Bell* ex rel *Snyder v. Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A.*, 986 S.W.2d 550, 555 (Tenn. 1999) (quoting *Priest*, 125 S.W.2d at 143). "Mere initiation of a law suit, though accompanied by a malicious ulterior motive, is not abuse of process." *Id.*

Again, although the factual statements in Appellant's complaint should be treated as true for purposes of Fed. R. Civ. P. 12(b)(6), Appellant has not pleaded sufficient facts to demonstrate that Appellees improperly used the court's process after filing the complaint for the turnover of the documents at issue. As noted earlier, the bankruptcy court properly concluded that the Trustee had a legal basis for filing the complaint against Appellant to compel the turnover of the documents. That Appellant had to then participate in various depositions, proceedings, and a pre-trial conference related to the matter as alleged in the complaint is nothing other than part of the normal procedure for parties engaging in a legal dispute. Appellant's complaint fails to allege any other facts that the Trustee engaged in acts outside of what should be the ordinary use of process. Accordingly, Appellant has failed to sufficiently plead facts to demonstrate the second element of its abuse of process claim can be met, and the bankruptcy court did not err in concluding Appellant's abuse of process claim should be dismissed pursuant to Rule 12(b)(6).[9]

Accordingly, the Court **AFFIRMS** the judgment in the bankruptcy court's September 30,

---

[9] As a final argument, Appellant argues the bankruptcy court dismissed its complaint without considering that the complaint provided for "such other appropriate relief to which GKH may be entitled" (Court File No. 1-3 at 17). However, Appellant failed to offer sufficient information regarding these unidentified causes of action to necessitate that the bankruptcy court address them prior to dismissing the action. This Court concludes the bankruptcy court did not err in determining Appellant's failure to state a plausible claim with respect to its two state law claims was grounds for dismissal of the complaint.

2011 Order.

## VI.    CONCLUSION

For the foregoing reasons, this Court **AFFIRMS** the judgment of the bankruptcy court in

1:11-CV-258; **AFFIRMS** the judgment of the bankruptcy court in 1:11-CV-320; and **AFFIRMS**

the judgment of the bankruptcy court in 1:11-CV-346. As no further matters remain for adjudication,

the Clerk of Court is directed to **CLOSE** these three cases.

_/s/_____

**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**